# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GARY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:18-cv-2190-GCS** |
| | ) | |
| **SCOTT THOMPSON,** | ) | |
| **KAREN JAIMET,** | ) | |
| **CHRISTINE BROWN,** | ) | |
| **DR. SCOTT,** | ) | |
| **DR. BUTALID, and** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

As narrowed by this Court's threshold order (Doc. 10), Plaintiff Gary Smith alleges that Defendants Jaimet, Brown, Scott, Butalid, and Wexford Health Sources, Inc. were deliberately indifferent to his serious medical needs by failing to ensure that he received adequate medical care for a severe sore throat that made it difficult for Smith to breathe and to swallow.[1] On March 20, 2020, Defendants Brown and Jaimet filed a motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 44). Smith, through counsel, responded in opposition on April 28, 2020. (Doc. 48). For the reasons delineated below, Defendants' motion is denied.

---

[1]     The threshold order added Warden Scott Thompson as a defendant in his official capacity only because, in addition to monetary damages, Smith seeks injunctive relief.

FACTUAL BACKGROUND

At all times relevant to his complaint, Smith was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Defendant Karen Jaimet was the warden at Pinckneyville, and Defendant Christine Brown was the healthcare unit administrator ("HCUA"). Smith alleges that he had a red, swollen, and irritated uvula that resulted in a severe sore throat that caused difficulty breathing and swallowing. When he felt that his medical issues were not treated adequately, Smith began filing grievances requesting that he be sent to an outside ear, nose, and throat specialist.

Defendants attach two relevant grievances to their motion. In the first, dated April 25, 2017, Smith explains that he was being denied proper and adequate healthcare. He complained that he submitted a sick call request for his throat issues on July 18, 2016, and that he saw a nurse who referred him to Dr. Scott. Dr. Scott diagnosed Smith with allergy issues and was given a prescription that did not help his symptoms. Smith explained that he submitted another sick call request on January 8, 2017. He spoke with a nurse before being examined by Nurse Practitioner Rector on January 12, 2017. Rector ordered blood tests and an x-ray before allegedly telling Smith he needed to see a throat specialist. (Doc. 45, p. 13-14).

The grievance goes on to explain that Smith saw Dr. Scott in February 2017 and a nurse in March 2017. On April 8, 2017, Smith was seen by a doctor's assistant, Tim Adesanya, who told Smith he would be referred to a doctor. (Doc. 45, p. 15). Smith did not name Brown or Jaimet in the grievance. A counselor reviewed Smith's grievance on April 25, 2017, writing, "Per HCUA: Offender has been treated per the assessment and

judgment of the providers. He was seen by the PA on 4-08-17 and has been referred to the MD. He is scheduled to see the doctor on 4-30-17." (Doc. 45, p. 13). The grievance does not contain a response from a grievance officer or from the Chief Administrative Officer ("CAO").

A July 5, 2017 memorandum from a grievance officer to Smith explains that the April 2017 grievance was being returned to him because Smith did not submit it to the grievance officer until July 5, 2017, when the counselor had returned the grievance to Smith on April 27, 2017. (Doc. 45, p. 17). In a letter to the Administrative Review Board ("ARB") dated July 11, 2017, Smith explained that a grievance officer denied the grievance on July 5, 2017, but explained that "this denial does not contain the signature of the Grievance Officer or the concurrence of the Chief Administrative Officer," even though Smith claimed that he submitted the grievance to the grievance officer on May 11, 2017. (Doc. 45, p. 16). On July 26, 2017, the ARB offered no further redress to Smith because the grievance was not submitted in the timeframe required by Department Rule 504 and because it was forwarded without a grievance officer's response. (Doc. 45, p. 12).

The second grievance attached to Defendants' motion is dated December 28, 2017. In the grievance, Smith again addresses what he views as the ongoing denial of necessary medical treatment. He explained that he had been seen by nurses, nurse practitioners, and doctors but was being denied a referral to an ENT specialist. He referred to additional grievances he filed on April 25, May 23, June 8, and July 11 that were of no help in securing a referral. Smith requested that he be referred to a specialist for treatment of his uvula and breathing problems. (Doc. 45, p. 20-21).

A grievance officer responded on January 5, 2018, "Per the HCUA: Wexford Health Source has denied an outside referral. Pinckneyville HCUA has sent an appeal to the Office of Health Services. At this time Wexford does not feel that an outside referral is medically necessary." (Doc. 45, p. 20). A grievance officer denied Smith's grievance on March 13, 2018. Jaimet concurred in the denial on March 26, 2018. (Doc. 45, p. 19). Smith appealed to the ARB on April 18, 2018. (Doc. 45, p. 19). The ARB denied his grievance on May 22, 2018, because the treatment requested must be ordered by an attending physician. (Doc. 45, p. 18).

With his response to Defendants' motion, Smith included additional grievances about his medical treatment and copies of letters he sent seeking assistance with his treatment. (Doc. 48-1). Smith wrote a grievance on May 23, 2017, involving his medical treatment and his ongoing pain. (Doc. 48-1, p. 12). The grievance complains about the medical director and Dr. Butalid. A counselor received the grievance on June 9, 2017, and responded on August 10, 2017. The response cited information received from the HCUA, Defendant Brown. No response from a grievance counselor, the CAO, or the ARB is included. (Doc. 48-1, p. 12-13).

Smith again raised complaints with the medical director in a June 8, 2017 grievance. (Doc. 48-1, p. 14-15). A grievance counselor responded on June 14, 2017, finding that it was a duplicate of the May 23, 2017 grievance. (Doc. 48-1, p. 14). The grievance does not show a response from a grievance officer or the CAO, nor is there a response from the ARB.

On August 14, 2017, Smith wrote to the grievance officer at Pinckneyville about the May 2017 and June 2017 grievances. (Doc. 48-1, p. 16). According to the letter, Smith enclosed the grievances, and he requested "access to the doctor ordered Ear Nose Throat Specialist." (Doc. 48-1, p. 16). No response to his letter was provided.

Smith also attached a copy of a July 11, 2017 grievance that states that it was filed directly with Defendant Jaimet on an emergency basis. No response from Jaimet marking it as an emergency or a non-emergency is shown on the copy provided. Similarly, no response from a counselor, grievance officer, or the CAO is written on the grievance. (Doc. 48-1, p. 18-19). Also attached to Smith's response is a January 19, 2018 letter that he wrote to Defendant Brown. In the four-page document, he recounted all of his issues receiving care for his throat problems and asked her for assistance. (Doc. 48-1, p. 27-30). Of the grievances submitted by the parties relevant to Smith's throat issues, only the April 25, 2017 grievance and the December 28, 2017 grievance appear in the ARB's records. (*See* Doc. 48-2).

### Legal Standards

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).  In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the Illinois Department of Corrections ("IDOC"), Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE

§ 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."  20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

The Court first considers the two grievances in the ARB's records: the April 2017 grievance and the December 2017 grievance. Defendants maintain that neither grievance complains about any specific conduct by Brown or Jaimet. They do not challenge, however, that the grievances were exhausted fully. While the ARB raised timing issues with respect to the April 2017 grievance, the December grievance was exhausted fully in a timely manner and was considered on its merits by the ARB.

Defendants are correct that neither grievance identifies Jaimet or Brown by name or by description of their position or conduct, but that does not establish, in turn, that Smith failed to exhaust his administrative remedies. An inmate is not required to provide personal notice to an individual defendant through his grievances. See *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)(citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)(citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)(stating that "[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.")). Instead, the purpose of a grievance is to provide "prison officials a fair opportunity to address [an inmate's] complaints." *Id.*

Here, prison officials, including Jaimet and Brown, were alerted to Smith's difficulties, and Smith exhausted grievances related to his complaints. Both Jaimet and Brown participated in responding to Smith's grievances. Jaimet's name appears as the signature on the December 2017 grievance on behalf of the CAO concurring with the grievance officer's decision to deny the grievance. Prison officials relied on information from Brown, the healthcare unit administrator, in responding to both the April grievance and the December grievance, as well as the other grievances Smith produced in his response.[2]

Smith's grievances, namely the December 2017 grievance, clearly explain that Smith believed his requests for treatment were being ignored, which parallels the conduct

---

[2]    Because the Court finds that the December 2017 grievance exhausted Smith's administrative remedies, the Court need not reach whether the additional grievances produced by Smith show that his administrative remedies were unavailable due to the failure of prison officials to respond.

that he alleges Brown and Jaimet engaged in after being informed of his difficulties. Defendants seem to suggest that Smith needed to file a separate grievance complaining that they, specifically, failed to address his lack of medical care by denying, or participating in the denial of, his grievances, but they cite no precedent in support of such a contention. As such, the undersigned finds that Defendants failed to carry their burden of establishing the affirmative defense of failure to exhaust administrative remedies.

## Conclusion

For all these reasons, Defendants' motion for summary judgment on the issue of exhaustion (Doc. 44) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 22, 2020.

Digitally signed
by Judge Sison
Date:
2020.05.22
09:02:16 -05'00'

GILBERT C. SISON
United States Magistrate Judge